UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RANDOLPH SCOTT BURTON, | Case No. 2:14-CV-84 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| WALGREEN CO., dba WALGREENS, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Randolph Burton's motion for sanctions for willful spoliation of relevant evidence. (Doc. # 27). Defendant Walgreen Company, dba Walgreens (hereinafter "Walgreens") filed a response (doc. # 28), and plaintiff filed a reply (doc. # 30).[1]

**I.   Background**

This is a personal injury action. Plaintiff was a customer of Walgreens' pharmacy for the purpose of filling his prescriptions for medications to treat high blood pressure. (Doc. # 27). Plaintiff had a prescription for Diovan, a medication that treated his high blood pressure. Plaintiff's prescription instructed him to take one tablet of Diovan by mouth daily.

On March 3, 2012, one of Walgreens' pharmacists improperly filled plaintiff's prescription. Walgreens admits that the pharmacist misfilled plaintiff's prescription with a mix of

---

[1] Walgreens also filed a sur-reply without moving for permission from the court. (Doc. # 38). Plaintiff has not filed a motion to strike Walgreens' sur-reply or any opposition to its filing. Still, sur-replies are generally not allowed without leave, and have been stricken by courts in this jurisdiction upon motion. *See, e.g.*, *FDIC v. Jacobs*, No. 3:13-cv-00084-RCJ, 2013 WL 6410022, at \*4 (D. Nev. Nov. 26, 2013); *Richards v. Univ. Med. Center of S. Nev.*, No. 2:09-cv-02444-LDG-PAL, 2011 WL 1098968, at \*2 (D. Nev. Mar. 21, 2001) (granting motion to strike a "supplement" to an opposition, which the court construed as a sur-reply). The court will not consider Walgreens' improperly filed sur-reply.

**James C. Mahan**
**U.S. District Judge**

1  Diovan and Lithium pills. (Doc. # 28 at 5). The two medications were different shaped pills, but
2  the same color.

3  Plaintiff did not notice the difference in the pills and continued to take one pill per day, as
4  instructed. At some point plaintiff's wife noticed that the pills in plaintiff's prescription bottle did
5  not match one another. Plaintiff's wife returned the misfilled medications to Walgreens. A
6  Walgreens employee, Melissa Ingleheart, "looked into the bottle, saw capsules as well as tablets,
7  noted it looked like Lithium, and double checked the pill on her computerized product
8  information" to confirm that they were Lithium pills. (Doc. # 27 at 3).

9  Plaintiff began to experience numbness and weakness in his left hand, and he checked in
10  to Boulder City hospital on March 14, 2012. (Doc. # 27 at 4). Plaintiff's wife informed hospital
11  staff that plaintiff had improperly taken medication that looked like lithium. Plaintiff's emergency
12  room records show that he potentially took one 300 milligram lithium pill per day for five days.
13  Physicians at the hospital diagnosed plaintiff with an adverse reaction to the improperly dispensed
14  Lithium. Plaintiff and defendant believe that the hospital learned the details of his accidental
15  lithium dosage from communications with Walgreens' pharmacists.

16  Soon after his visit to Boulder City hospital, plaintiff followed up with his family physician,
17  who referred plaintiff to Dr. Jonathon Sorelle of the Minimally Invasive Hand Institute. (Doc. #
18  27 at 4). When plaintiff's symptoms worsened in subsequent months, Dr. Sorelle conducted nerve
19  tests on plaintiff. Dr. Sorelle diagnosed plaintiff with carpal tunnel syndrome and polyneuropathy,
20  as a result of plaintiff's improper ingestion of Lithium. (Doc. # 27 at 4).

21  On June 22, 2012, Dr. Sorelle performed hand and arm surgery on plaintiff. Plaintiff states
22  that he still suffers "residual pain and stiffness as a result of this incident." (Doc. # 27 at 4).
23  Defendant disputes the causation of plaintiff's arm numbness, and maintains that plaintiff was
24  never exposed to a toxic dose of lithium. (Doc. # 28 at 5).

25  Plaintiff filed suit on March 14, 2013, in the Eighth Judicial District Court for Clark
26  County, Nevada, asserting various negligence claims against Walgreens. (Doc. # 1-1). During
27  discovery, plaintiff asked Walgreens to release its policies for dealing with erroneously dispensed
28  prescriptions and returned medications. Plaintiff also asked defendant to produce the bottle with

**James C. Mahan**
**U.S. District Judge**

- 2 -

its contents intact so that he may test the pills inside to determine if some pills were in fact lithium. Defendant informed plaintiff that it had destroyed the bottle and its contents in accordance with store policy.

Plaintiff filed the instant motion for spoliation sanctions asking the court to strike defendant's answer and affirmative defenses on liability and causation, and allow a bench trial to determine only plaintiff's damages. In the alternative, plaintiff requests an adverse inference jury instruction. Plaintiff also asks the court to find that the unavailable evidence would have supported defendant's negligence, preclude defendant's evidence that controverts the adverse inference, and award plaintiff attorneys' fees and costs he incurred in preparing the instant motion for sanctions. (Doc. # 27 at 2).

## II.     Legal Standard

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *United States v. Kitsap Physicians Servs.*, 314 F.3d 995, 1001 (9th Cir. 2002) (citing *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)) (parties engage in spoliation as a matter of law only if they had some notice that the documents were potentially relevant to the litigation before they were destroyed). A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence. *Kitsap*, 314 F.3d at 1001; *In re Napster*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006).

A district court has two sources of authority to sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Federal Rule of Civil Procedure 37 against a party who "fails to obey an order to provide or permit discovery." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citing *Fjelstad v. Am. Honda Motor Co., Inc.,* 762 F.2d 1334, 1337 (9th Cir. 1985); Fed. R. Civ. P. 37(b)(2)(C). Federal courts sitting in diversity jurisdiction apply federal law when addressing issues of spoliation of evidence. *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993).

**James C. Mahan**
**U.S. District Judge**

The decision to impose spoliation sanctions is discretionary. *See Glover*, 6 F.3d at 1329; *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.,* 982 F.2d 363, 368 (9th Cir. 1992). When determining whether to impose discovery sanctions for spoliation, the threshold question that the court must decide is whether relevant evidence existed. *See, e.g.*, *Patton v. Walmart*, No. 12-cv-2142-GMN-VCF, 2013 WL 6158467, at *3 (D. Nev. Nov. 30, 2013). If no relevant evidence existed, then the motion for spoliation is moot. However, if relevant evidence did exist, then the question is whether the nonmoving party had a duty to preserve the evidence.

### III.     Discussion

When a defendant destroys evidence according to its internal policies or the normal course of business, that defendant has not engaged in the spoliation of evidence if the defendant had no notice of the evidence's potential relevance in future litigation. *Kitsap*, 314 F.3d at 1001.

Before imposing sanctions, the court should consider whether the alleged spoliation prejudiced plaintiff. *See In re Napster,* 462 F. Supp. 2d at 1075 n.4 (citing *Halaco Eng'g Co. v. Costle,* 843 F.2d 376, 382 (9th Cir. 1988)) (under the court's inherent authority to impose sanctions, prejudice is an optional consideration). A prejudice inquiry determines whether the spoliating party's actions impaired the other party's "ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon,* 464 F.3d at 959 (citation omitted).

First, plaintiff argues that Walgreens purposefully and willfully destroyed the medication in violation of its store policy to quarantine returned medication. (Doc. # 27 at 6). Walgreens asserts that it did not willfully destroy evidence, because the pharmacist disposed of the medication as directed by Walgreens' store policy to quarantine and destroy returned medication and not for an improper purpose. (Doc. # 28 at 7).

The court finds Walgreens acted in accordance with its store policy to quarantine and destroy medications. When plaintiff returned his medication, the receiving pharmacist placed it in a depository safe. (*Id.*). Walgreens then sent the returned medication to its prescription return center, where it was destroyed in compliance with store policy. (*Id.*). *See Kitsap*, 314 F.3d at 1001. Plaintiff presents no evidence to rebut Walgreens' explanation. *Id.*

James C. Mahan
U.S. District Judge

- 4 -

Second, plaintiff contends that Walgreens had a duty to preserve the evidence because it knew of the "significant potential of litigation" as soon as it completed an incident report to provide to its insurance carrier. (Doc. # 27 at 6; doc. # 30 at 4.) Walgreens responds that customers return medications frequently and that it would be impractical, if not impossible, for Walgreens to preserve medications just in case someone brings a suit in the future.

The court finds that the return of an incorrectly filled medication, issued to and consumed by a customer, triggered Walgreens' duty to preserve evidence. *See, e.g.*, *Aiello v. Kroger Co.*, No. 2:08-cv-01728-HDM-RJJ, 2010 WL 3522259 (D. Nev. Sept. 1, 2010). The court is unconvinced that customers return any significant portion of their medications because of misfilled prescriptions. Further, Walgreens filed an incident report with its insurance company immediately after it learned of the erroneously dispensed prescription. Walgreens was on notice of potential litigation due to its error.

Though Walgreens had a duty to preserve the evidence, the court finds that plaintiff faces no prejudice from Walgreens' spoliation. Plaintiff seeks to establish that a toxic dose of Lithium caused his injuries. Walgreens admits that it misfilled plaintiff's prescription with a combination of Diovan and Lithium, but disputes that Lithium toxicity caused the numbness in plaintiff's arm. Walgreens asserts that plaintiff was not exposed to a toxic dose of Lithium.

Though plaintiff cannot inspect the actual bottle and pills, plaintiff has evidence available regarding the types and dosages of the pills Walgreens dispensed and the maximum amount plaintiff potentially consumed. Plaintiff's medical records, Walgreens' admissions, and pharmacist Melissa Ingleheart's testimony provide plaintiff with the necessary information to prosecute his case. (Doc. # 28-2 at 17, 21). The court knows of no other information plaintiff might glean from having the actual bottle and pills in hand.

The court finds that, based on the available evidence, plaintiff's inability to examine the pills and prescription bottle does not prejudice plaintiff's ability to prove causation. Lithium is a common medication that has been used for decades and its effects are widely studied. Plaintiff has the information regarding the types of medications, dosages, and amount he consumed. The court declines to impose spoliation sanctions.

James C. Mahan
U.S. District Judge

- 5 -

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff Randolph Burton's motion for sanctions for willful spoliation of relevant evidence (doc. # 27) be, and the same hereby is, DENIED.

DATED July 10, 2015.

_____
UNITED STATES DISTRICT JUDGE